## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| ENCHANTED GREEN LLC, | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2023-CV-_____** |
| | ) | |
| ALABAMA MEDICAL CANNABIS | ) | |
| COMMISSION; | ) | |
| WILLIAM SALISKI, JR., M.D.; | ) | |
| SAM BLAKEMORE; | ) | |
| DWIGHT GAMBLE; | ) | |
| ANGELA MARTIN, M.D.; | ) | |
| ERIC JENSEN; | ) | |
| LOREE SKELTON; | ) | |
| REX VAUGHN; | ) | |
| CHARLES PRICE; | ) | |
| TAYLOR HATCHETT; | ) | |
| JAMES HARWELL; | ) | |
| JERZY SZAFLARSKI, M.D.; | ) | |
| DION ROBINSON; | ) | |
| JIMMIE H. HARVEY, M.D., et al., | ) | |
| | ) | |
|     **Defendants.** | ) | |

## <u>VERIFIED COMPLAINT</u>

COMES NOW the Plaintiff, Enchanted Green LLC, by and through its counsel of record, and files this Verified Complaint and accompanying Emergency Motion for Temporary Restraining Order and Preliminary Injunctive Relief and Memorandum Brief in Support of Emergency Motion for Temporary Restraining

1

Order and Preliminary Injunctive Relief, seeking that the Court immediately intervene and grant the relief requested herein as follows:

## INTRODUCTION

1.     On December 4, 2023, the Alabama Medical Cannabis Commission ("AMCC") proposed to issue four (4) processor licenses to four (4) different companies according to an emergency process pursuant to Ala. Code § 20-2A-seq.

2.     This emergency process purported to replace the previous process which involved applicants submitting extensive applications for independent scoring and review and did not require applicants to make any presentation to the AMCC.

3.     The members of the AMCC are Dr. William Saliski, Jr., Sam Blakemore, Dwight Gamble, Dr. Angela Martin, Dr. Eric Jensen, Loree Skelton, Rex Vaughn, Charles Price, Taylor Hatchett, James Harwell, Dr. Jerzy Szaflarski, Dion Robinson, and Jimmie H. Harvey, M.D.

4.     In October 2023, after awarding a processor license to Enchanted Green, LLC ("Enchanted Green") who scored and ranked second out of all processor license applicants in two rounds of scoring (one in June and again in August), and after Enchanted Green paid a $40,000.00 license fee which was supposed to result in the AMCC issuing Plaintiff a processor license, the AMCC "rescinded" (i.e., revoked) the processor license awards and refused to issue licenses to any of the awardees, including Plaintiff Enchanted Green.

2

5.     The AMCC rescinded/revoked those license awards without any prior notice to awardees including Enchanted Green, without providing any opportunity for awardees to appeal or be heard, and without any transparency or stated justification for its "recission" of the licenses.

6.     After rescinding/revoking the processor license awards in October 2023, in November 2023, the AMCC announced a "new" set of rules and a "new" process for the award of processor licenses. This new process was the third attempt by the AMCC, to issue licenses and required applicants like Enchanted Green to make live presentations to the members of the AMCC on November 28, 2023 in Montgomery, Alabama (Montgomery County, Alabama).

7.     Plaintiff Enchanted Green participated in and complied with the new process under protest, including making the presentation to the AMCC members on November 28, 2023.

8.     On November 29, 2023, the Circuit Court of Montgomery County, Alabama issued an order permanently enjoining the AMCC from considering the "scores" from the previous application processes. The court order was the result of a settlement between the AMCC and certain applicants who failed to receive licenses in the original processes.

9.     On December 1, 2023, after all processor applicant presentations, the AMCC voted on the third round of awards of processor licenses.

10.     During the December 1, 2023 meeting, the AMCC awarded a license to an applicant that had previously scored 5th and had not been awarded a license.

11.     It was further determined that, according to the members of the AMCC, Plaintiff Enchanted Green and another group applying for a processor license had "tied" for fourth place and for the fourth and final processor license that was to be awarded by the AMCC.

12.     The members of the AMCC then informed Enchanted Green and others during the December 1, 2023 award announcement that the Commission would "draw" to see which applicant (between Enchanted Green and the other group that tied for fourth place) would be considered by the Commission for a license first, which (given this flawed process) would result in being issued the fourth processor license.

13.     A staff member of the AMCC in the hearing room where the award announcements were made, pulled a bowl out from under the dais and handed the bowl to one of the AMCC commissioners, and the commissioner to whom the bowl was handed peered/looked into the bowl and then pulled out a piece of paper which supposedly had the name of the other processor group that tied for fourth place on it. The commissioner did not appear to unfold the piece of paper after drawing it from the bowl. There was no evidence or indication that both applicants' names were actually contained on pieces of paper in the bowl, that the pieces of paper were

folded so the selecting commissioner could not see which one he was choosing, that the pieces of paper were the same size, weight, shape, character, and indistinguishable from one another other than the differing names on them, or that any other parameter(s) of a fair drawing were followed by the Commission and its commissioners.

14. The chairman then asked the other commissioners present to vote on whether to award a processor license to the group supposedly identified on the piece of paper the commissioner drew from the bowl.

15. After the commissioners voted on the group supposedly identified on the piece of paper drawn from the bowl, another commissioner and member of the AMCC asked if the members of the commission were going to vote on whether to award Enchanted Green the fourth and final processor license to see who between Enchanted Green or the other group would receive more votes from the commissioners to decide which applicant was awarded the fourth processor license – clearly indicating that the members of the AMCC – the commissioners themselves – were not fully aware of and did not fully understand the rules that were supposedly in place to determine which applicant should be awarded a processor license when there is a tie between two applicants.

16. Another staff member from the AMCC then suggested the Commission would have to nullify the first vote it had conducted for the fourth license in order to

vote on whether to award a processor license to Enchanted Green and to see which applicant received the most votes, thus showing even further confusion regarding any supposed rule(s) or parameter(s) that were supposed to control and apply to the AMCC's process of determining which applicant was to be issued a processor license in the event that two applicants tied for one of the licenses that was to be awarded.

17.     Then the staff member and the chair from the AMCC suggested the tiebreaking process was over after all the aforementioned confusion and lack of understanding and lack of clarity had been expressed and exhibited by the Commission's members/commissioners, abruptly ending the process.

18.     Although applicants submitted thousand-page applications it was unclear that the AMCC commissioners evaluated the applications after the "scores" were barred from consideration; the court did not throw out the applications but only the scores.

19.     Although there was purportedly an open competition to determine eligibility for and awarding of the 4 processor licenses, the AMCC has announced plans to award the 4 licenses without providing any opportunity for administrative or judicial review for the applicants whose applications the AMCC has denied – no opportunity to seek review of the AMCC's decision(s) prior to it issuing the licenses, or to fully object to the emergency third process.

20.     The AMCC's actions of repeatedly changing rules, criteria, and parameters for applicants, their submissions, and the awarding of processor licenses was and is unconstitutional and cannot be permitted. The AMCC's decision to go forward with a plan to award licenses without providing the unsuccessful license applicants any legitimate or meaningful opportunity to challenge the denial of their applications and the decisions not to award them licenses is unconstitutional, and cannot be permitted.

21.     Allowing the AMCC to proceed with issuing licenses to applicants to whom it has awarded licenses in this most recent round of applications, submissions, and awards would cause irreparable injury to Plaintiff Enchanted Green and other license applicants who were unsuccessful in this most recent round of applications, submissions, presentations, and license awards.

22.     The threatened and almost certain (if not certain) injury to Enchanted Green and other unsuccessful applicants outweighs any potential damage the requested relief may cause the AMCC, or even successful applicants to whom the AMCC announced on December 1, 2023 they would award licenses.

23.     The relief requested by Plaintiff Enchanted Green would not be adverse to the public interest, as the State of Alabama has never heretofore permitted the sale, distribution, or use of cannabis and/or cannabis products for medicinal

purposes, so Alabama population of citizens would remain unaffected if the requested relief is granted by the Court.

24.     Accordingly, in conjunction with this Complaint, Plaintiffs herein seek injunctive relief for the reasons specified below.

## PARTIES

25.     Plaintiff ENCHANTED GREEN, LLC ("Enchanted Green") is and was at all times relevant to this Complaint and Petition an Alabama domestic limited liability company that was formed in the State of Alabama with its principal place of business located in Dothan, Alabama (Houston County, Alabama).

26.     Defendant ALABAMA MEDICAL CANNABIS COMMISSION ("AMCC" or "the Commission") is and was at all times relevant and material to this Complaint an Alabama administrative agency created to issue licenses to cultivate, process, transport, dispense, and test medical cannabis in Alabama pursuant to the Darren Wesley "Ato" Hall Compassion Act (the "Act"), Ala. Code § 20- 2A-1 et seq., with its primary office located in, and its activities serving as the basis of this action and the relief requested herein occurring in, Montgomery, Alabama (Montgomery County, Alabama).

27.     Defendant WILLIAM SALISKI, JR., M.D. ("Saliski" or "Dr. Saliski") is and was at all times relevant and material to this Complaint an adult over nineteen (19) years of age and resident and citizen of Montgomery County, Alabama.

8

28.     Defendant SAM BLAKEMORE ("Blakemore") is and was at all times relevant and material to this Complaint an adult over nineteen (19) years of age and resident and citizen of Jefferson County, Alabama.

29.     Defendant DWIGHT GAMBLE ("Gamble") is and was at all times relevant and material to this Complaint an adult over nineteen (19) years of age and resident and citizen of Henry County, Alabama.

30.     Defendant ANGELA MARTIN, M.D. ("Martin" or "Dr. Martin") is and was at all times relevant and material to this Complaint an adult over nineteen (19) years of age and resident and citizen of Calhoun County, Alabama.

31.     Defendant ERIC JENSEN ("Jensen") is and was at all times relevant and material to this Complaint an adult over nineteen (19) years of age and resident and citizen of Madison County, Alabama.

32.     Defendant LOREE SKELTON ("Skelton") is and was at all times relevant and material to this Complaint an adult over nineteen (19) years of age and resident and citizen of Jefferson County, Alabama.

33.     Defendant REX VAUGHN ("Vaughn") is and was at all times relevant and material to this Complaint an adult over nineteen (19) years of age and resident and citizen of Madison County, Alabama.

34.     Defendant CHARLES PRICE ("Price") is and was at all times relevant and material to this Complaint an adult over nineteen (19) years of age and resident and citizen of Montgomery County, Alabama.

35.     Defendant TAYLOR HATCHETT ("Hatchett") is and was at all times relevant and material to this Complaint an adult over nineteen (19) years of age and resident and citizen of Chilton County, Alabama.

36.     Defendant JAMES HARWELL ("Harwell") is and was at all times relevant and material to this Complaint an adult over nineteen (19) years of age and resident and citizen of Montgomery County, Alabama.

37.     Defendant JERZY SZAFLARSKI, M.D. ("Szaflarski") is and was at all times relevant and material to this Complaint an adult over nineteen (19) years of age and resident and citizen of Jefferson County, Alabama.

38.     Defendant DION ROBINSON ("Robinson") is and was at all times relevant and material to this Complaint an adult over nineteen (19) years of age and resident and citizen of Macon County, Alabama.

39.     Defendant JIMMIE H. HARVEY, M.D. ("Harvey") is and was at all times relevant and material to this Complaint an adult over nineteen (19) years of age and resident and citizen of Jefferson County, Alabama.

## JURISDICTION AND VENUE

40.     Plaintiff adopts and re-alleges all prior paragraphs of this Complaint as if set out here in full.

41.     This Court has original jurisdiction over this case and the Plaintiff's claims pursuant to 28 U.S.C. § 1331 because this civil action arises under and the Plaintiff's claims for relief are based upon the Constitution and laws of the United States, including, but not limited to, the Due Process clause and federal law.

42.     Venue is proper in this Circuit and Court pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(1) because one or more of the Defendants resides in this judicial district, all Defendants are residents of the State of Alabama, and a substantial part of the acts, omissions, occurrences, and events giving rise to the Plaintiff's claims against the named Defendants in this civil action occurred in Montgomery County, Alabama, which is located in the Middle District of Alabama, Southern Division.

## FACTUAL ALLEGATIONS

43.     Plaintiff adopts and re-alleges all prior paragraphs of this Complaint as if set out here in full.

44.     The Commission (the AMCC) was created by the Alabama Legislature in 2021 pursuant to the Act. See Ala. Code § 20-2A-20. The Act authorizes the Commission to issue licenses to cultivate, process, dispense, and test medical

cannabis in Alabama. Ala. Code §§ 20-2A-50, 62-67. The Act created six categories of licenses, including a Processor license. Ala. Code § 20-2A-63.

45.     Plaintiff Enchanted Green was formed between October 2022 and December 2022 for the purpose of applying for a Processor license under the Act and operating a Processor in accordance with the Act.

46.     The AMCC is an Alabama administrative agency created to issue licenses to cultivate, process, transport, dispense, and test medical cannabis in Alabama pursuant to the Darren Wesley "Ato" Hall Compassion Act (the "Act"), Ala. Code § 20- 2A-1 et seq., with its primary office located in Montgomery, Alabama (Montgomery County, Alabama).

47.     Pursuant to the Act, the Commission is subject to the Alabama Administrative Procedures Act (the "APA"), Ala. Code § 20-2A-20(p), which provides the "minimum procedural code for the operation of all state agencies when they take action affecting the rights and duties of the public." Ala. Code § 41-22-2(a).

48.     Alabama Code § 20-2A-57(c) provides that "[t]he commission shall comply with the hearing procedures of the [APA] when denying, revoking, suspending, or restricting a license...."

49.     Nothing in the Act or elsewhere in the Alabama Code provides the Commission with authority to "rescind" or "void" a license it has awarded, such as

the processor license it awarded to Plaintiff Enchanted Green on no less than two (2) separate prior occasions.

50.     Alabama Code § 20-2A-57(f) grants any person who is aggrieved by an action of the Commission the right to appeal the action in the circuit court where the Commission is located.

51.     Alabama Code § 41-22-20(a) provides for immediate review where an administrative review of an agency's procedural act will not provide an adequate remedy.

52.     The following facts, which are discussed in more detail below, provide the basis for this Complaint:

a. The Commission is authorized to issue only a finite/limited number of Processor licenses. Ala. Code § 20-2A-63.

b. In June 2023, the Commission voted to grant Enchanted Green a Processor license.

c. The only requirement set forth in the Act for having a license issued after being awarded a license is to pay the annual license fee. See Ala. Code § 20-2A-56(f) ("Before issuing a license, the applicant shall pay the annual license fee, as established by the commission.")

d. After the June 2023 meeting, the Commission invoiced Enchanted Green for payment of a $40,000 license fee. The award was immediately stayed until the August meeting.

e. In August 2023, the Commission purported to "void" all the previously awarded licenses, including the awarded Processor licenses, on grounds that tabulation errors had been discovered in the scoring process.

f. After it "voided" all previously awarded licenses, in August 2023 the Commission voted to "re-award" all Processor licenses, and Enchanted Green was again awarded a license.

g. In August 2023, after having been awarded a license twice, Enchanted Green paid its $40,000 license fee to the Commission. To date, the Commission retains possession of Enchanted Green's license fee, but Enchanted Green has not been issued a license despite the application fee having been paid in full.

h. Following the Commission's August 2023 meeting(s), numerous claims were filed by applicants that were denied a license.

i. In response to the claims filed by denied applicants, on August 31, 2023, the Commission self-imposed an "administrative stay" on the issuance of all licenses, including Enchanted Green's license. That stay was not purportedly based on any act or omission of Plaintiff Enchanted Green.

j. On October 12, 2023, the Commission adopted what it called an emergency rule (the "Emergency Rule") providing "special procedures" applicable to all license applications that "become subject to an award of license by the Commission on or after the effective date of this Rule." See Ala. Admin. Code § 538-x-3- .20ER.

k. On October 26, 2023, the Commission: (i) lifted its administrative stay; and (ii) voted to once again "rescind" (that is, revoke) all licenses awarded in August 2023. That time, no scoring tabulation errors were referenced as justification for such action by the Commission. Instead, the Commission apparently relied upon its supposed/professed inherent or implied authority to "rescind" or "void."

l. The Act sets forth certain bases for the Commission to revoke a license, none of which are applicable to Enchanted Green or have been alleged by the Commission to be applicable to Enchanted Green. See Ala. Code § 20-2A-57(a).

m. The Commission's October 26, 2023 revocation of Enchanted Green's license was in no way prompted by or related to any perceived defect in Enchanted Green's application, nor was it prompted by or in any way related to any act or omission of Enchanted Green.

14

n. The Commission is required to "comply with the hearing procedures of the [APA] when ... revoking ... a license...." Ala. Code § 20-2A-57(c).

o. Pursuant to the APA, "[n]o revocation ... of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by certified mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license." Ala. Code § 41-22-19(c).

p. The Commission failed to provide Enchanted Green with proper notice of its intent to revoke Enchanted Green's license prior to its October 26, 2023 meeting during which Enchanted Green's license was revoked.

q. The Commission failed to provide Enchanted Green with an opportunity to show compliance with all lawful requirements for the retention of its license prior to the October 26, 2023 revocation of its license.

r. The Commission subsequently informed applicants, including Enchanted Green, in November 2023 that it would be observing a new/alternative process for applicants to be awarded licenses – a third round of license awards – that would involve, among other things, applicants making presentations to the AMCC prior to the determination of awarding licenses to applicants.

s. On November 27, 2023, the Commission voted to enter into a settlement with plaintiffs in a separate matter in which it agreed to disregard the scoring for the purpose of selecting new licensees. This decision by the commission set aside the objective process already conducted by the commission and implemented a new process that had no objective parameters inherently making any new license award arbitrary pursuant to that new/third application submission, review, consideration, and license award process.

t. On November 29, 2023, the Circuit Court of Montgomery County, Alabama issued an order permanently enjoining the AMCC from considering the "scores" from the previous application processes.

u. On December 1, 2023, after all processor applicant presentations, the AMCC voted to award the processor licenses for a third time to four applicants, one of whom had previously scored 5th and had not been awarded a license.

v. During each license award vote, the commissioners discussed the awardees and rational for the award. Although applicants submitted thousand-page applications it was unclear that the AMCC commissioners evaluated the applications after the "scores" were barred from consideration. The applications were not mentioned by the commissioners as part of their decisions, rather the commissioners identified the presentations as the rational for their awards.

w. During the December 1, 2023 meeting, according to the members of the AMCC, Plaintiff Enchanted Green and another group applying for a processor license "tied" for fourth place and for the fourth and final processor license that was to be awarded by the AMCC.

x. The members of the AMCC then informed Enchanted Green and others that the Commission would "draw" to see which applicant (Enchanted Green or the tied other group) would be reviewed/voted on by the Commission first.

y. A staff member of the AMCC in the hearing room where the award announcements were made then pulled a bowl out from under the dais and handed one of the AMCC commissioners the bowl, and the commissioner to whom the bowl was handed looked into the bowl and pulled out a piece of paper which supposedly had the name of the other processor group that tied for fourth place on it.

z. The commissioner did not appear to unfold the piece of paper he had selected after looking into the bowl and before he read the name of the other applicant supposedly contained on that piece of paper. There was no evidence or indication that both applicants' names were actually contained on pieces of paper in the bowl, that the pieces of paper were folded so the selecting commissioner could not see which one he was choosing, that the pieces of paper were the same size, weight, shape, character, and indistinguishable from one another other than the differing names on them, or that any other parameter(s) of a fair drawing were followed by the Commission and its commissioners.

aa. The chairman then asked the other commissioners present to vote on whether to award a processor license to the group supposedly identified on the piece of paper the commissioner drew from the bowl.

16

bb. After the commissioners voted on the group supposedly identified on the piece of paper drawn from the bowl, another commissioner and member of the AMCC asked if the members of the commission were going to vote on whether to award Enchanted Green the fourth and final processor license to see who between Enchanted Green or the other group would receive more votes from the commissioners to decide which applicant was awarded the fourth processor license – clearly indicating that the members of the AMCC – the commissioners themselves – were not fully aware of and did not fully understand the rules that were supposedly in place to determine which applicant should be awarded a processor license when there is a tie between two applicants.

cc. Another staff member from the AMCC then suggested the Commission would have to nullify the first vote it had conducted for the fourth license in order to vote on whether to award a processor license to Enchanted Green and to see which applicant received the most votes, thus showing even further confusion regarding any supposed rule(s) or parameter(s) that were supposed to control and apply to the AMCC's process of determining which applicant was to be issued a processor license in the event that two applicants tied for one of the licenses that was to be awarded.

dd. Then the staff member and the chair from the AMCC suggested the tiebreaking process was over after all the aforementioned confusion and lack of understanding and lack of clarity had been expressed and exhibited by the Commission's members/ commissioners, abruptly ending the process.

53.    Over the course of 2022, the Commission undertook the rulemaking process for the medical cannabis program, including addressing specific details relating to the licensing process and timeline. That rulemaking process involved numerous regulatory workshops on specific topics relevant to the program and a public comment period where any interested parties could provide input.

54.    On August 11, 2022, the Commission adopted final rules and regulations governing the filing and submission of applications and the granting of

licenses under the Act. See Ala. Admin. Code r. 586-X-1, et seq. (the "Rules"); see also Ala. Code § 20-2A-55. Those rules were officially published on August 31, 2022, and became effective on October 15, 2022.

55.    In October 2022, Application Forms were made available to those applicants who timely submitted their Request for Application. Those Application Forms included an Application Guide, detailing the license process, timeline, details on how applications would be evaluated, and the material requested for submission.

56.    In October 2022, applicants could begin filing completed Application Forms. At that time, all applicants had the opportunity to access the online portal to test its functionality and generally acclimate to the layout of the portal for the eventual submission—basic due diligence that should be expected of any applicant or licensee in a highly regulated industry.

57.    Pursuant to the Act and the Commission's rules, Enchanted Green timely submitted its application in compliance with all applicable parameters and instructions.

58.    In June 2023, the Commission was tasked with voting to grant or deny licenses.

59.    In June 2023, the Commission met and voted to award a Processor license to Enchanted Green under the Act and Rules, with the only requirement for

the Commission to issue Enchanted Green its license was for it to pay the annual license fee. Ala. Code § 20-2A-56(f).

60.    Immediately thereafter, the Commission voted "to stay all proceedings related to the current offering of medical cannabis business licenses", pausing the date for the fee to be paid.

61.    In August 2023, the Commission voted to "void" all the previously awarded licenses, including the Processor license that had been awarded to Enchanted Green, describing/claiming certain scoring tabulation errors as its justification for doing so.

62.    That revocation vote was in no way prompted by or purportedly related to any perceived defect in Enchanted Green's application, nor was it in any way prompted by or related to any act or omission of Enchanted Green.

63.    In August 2023, the Commission voted to re-award a Processor License to Enchanted Green.

64.    Immediately thereafter, Enchanted Green paid its $40,000 license fee to the Commission. To date, the Commission retains possession of Enchanted Green's $40,000 license fee.

65.    Later in August 2023, the Commission voted to enact an "administrative stay" on the issuance of licenses. Following that stay, the Commission continued to fail to issue Enchanted Green's processor license. That

stay was wholly unrelated to any perceived act or omission by Plaintiff Enchanted Green.

66.   In October 2023, the Commission voted to adopt an Emergency Rule providing "special procedures" applicable to all license applications that "become subject to an award of license by the Commission on or after the effective date of this Rule."

67.   Later in October 2023, the Commission: (i) lifted its administrative stay; and (ii) voted to "rescind" all licenses awarded in August 2023. That time, no scoring tabulation errors were referenced as justification for such action by the Commission. Instead, the Commission relied upon its supposed/professed inherent or implied authority to "rescind" or "void."

68.   The Commission's October 2023 action to "rescind" Enchanted Green's license was an unjustified revocation of such license which violated Enchanted Green's Due Process rights.

69.   The Commission then proceeded in November 2023 to change the rules and parameters pertaining to license applicants, scoring of applicants, and awarding of licenses to applicants, throwing out all prior scoring methods with which all applicants and Plaintiff Enchanted Green had previously complied and which had results in Enchanted Green being awarded one of the four processor licenses, and

instituting a new requirement for applicants to make a presentation to the Commission and its members.

70.     More specifically, on or about November 22, 2023, the Commission notified applicants of a "tentative" settlement of certain lawsuit and claims asserted by "certain applicants" that the Commission would not be able to confirm whether such settlement was finalized or approved until it next met on November 27, 2023, and the Commission noted that part of the referenced tentative settlement would include: (1) that all third party scores/scoring upon which all applicants, including Plaintiff Enchanted Green, had based their applications and approach to the entire licensing process would be thrown out and no longer considered when determining which applicants would be awarded licenses; and (2) proposed presentations that applicants would have to make before the Commission the following week (November 28, 2023 for Enchanted Green and other processor license applicants); and (3) that the Commission would potentially score applicants and determine to whom license awards would be granted based strictly on application materials submitted to the Commission and the applicants' presentations, and no third party scores as had been previously relied upon by the Commission.

71.     On November 27, 2023, some ten (10) minutes before some license applicants seeking cultivator and/or state testing laboratory licenses were to begin their presentations, the Commission informed license applicants and confirmed the

"new" application submission and scoring parameters which included no consideration of third party scoring and only consideration of application materials and applicant presentations in deciding whether to grant licenses.

72.   November 27, 2023 was also the deadline for applicants to submit written materials for the Commission to consider prior to making license award determinations and announcements on December 1, 2023 – giving the Commission members four (4) days or less to review some 90 or more sets of application materials which usually exceeded 1,000 pages.

73.   On November 28, 2023, processor license applicants, including Plaintiff Enchanted Green, were required to give presentations to the Commission and its members to comply with and complete the license application process to be eligible to be awarded a license by the Commission. Enchanted Green participated in and complied with that process, and gave a presentation to the Commission on November 28, 2023.

74.   At the conclusion of applicant presentations on November 28, 2023, certain of the commissioners made comments regarding how well-done and informative the applicants' presentations were.

75.   None of the commissioners mentioned anything about any of the written materials submitted by the applicants, indicating the commissioners likely did not even read, review, or consider the written materials submitted with the

22

applications, and relied entirely on the applicants' presentations to make their license award decisions.

76.    On December 1, 2023, On December 1, 2023, after all processor applicant presentations and submissions had supposedly been reviewed and considered by the AMCC and its members, the AMCC revealed and announced the third round of awards of processor licenses.

77.    During the AMCC's December 1, 2023 announcement of processor license awards, it was determined that, according to the members of the AMCC, Plaintiff Enchanted Green and another group applying for a processor license had "tied" for fourth place and for the fourth and final processor license that was to be awarded by the AMCC.

78.    The members of the AMCC then informed Enchanted Green and others during the December 1, 2023 award announcement that the Commission would "draw" to see which applicant between Enchanted Green and the other group that tied for fourth place would have their application voted on first (effectively deciding which applicant would receive the fourth processor license).

79.    A staff member of the AMCC in the hearing room where the award announcements were made, pulled a bowl out from under the dais and handed the bowl to one of the AMCC commissioners, and the commissioner to whom the bowl was handed peered/looked into the bowl and then pulled out a piece of paper which

had the name of the other processor group that tied for fourth place on it. The commissioner did not appear to unfold the piece of paper he had selected after looking into the bowl. There was no evidence or indication that both applicants' names were actually contained on pieces of paper in the bowl, that the pieces of paper were folded so the selecting commissioner could not see which one he was choosing, that the pieces of paper were the same size, weight, shape, character, and indistinguishable from one another other than the differing names on them, or that any other parameter(s) of a fair drawing were followed by the Commission and its commissioners.

80.    The chairman then asked the other commissioners present to vote on whether to award a processor license to the group supposedly identified on the piece of paper the commissioner drew from the bowl.

81.    After the commissioners voted on the group supposedly identified on the piece of paper drawn from the bowl, another commissioner and member of the AMCC asked if the members of the commission were going to vote on whether to award Enchanted Green the fourth and final processor license to see who between Enchanted Green or the other group would receive more votes from the commissioners to decide which applicant was awarded the fourth processor license – clearly indicating that the members of the AMCC – the commissioners themselves – were not fully aware of and did not fully understand the rules that were supposedly

in place to determine which applicant should be awarded a processor license when there is a tie between two applicants.

82.   Another staff member from the AMCC then suggested the Commission would have to nullify the first vote it had conducted for the fourth license in order to vote on whether to award a processor license to Enchanted Green and to see which applicant received the most votes, thus showing even further confusion regarding any supposed rule(s) or parameter(s) that were supposed to control and apply to the AMCC's process of determining which applicant was to be issued a processor license in the event that two applicants tied for one of the licenses that was to be awarded.

83.   Then the staff member and the chair from the AMCC suggested the tiebreaking process was over after all the aforementioned confusion and lack of understanding and lack of clarity had been expressed and exhibited by the Commission's members/ commissioners, abruptly ending the process.

84.   Although there was purportedly an open competition to determine eligibility for and awarding of the 4 processor licenses, the AMCC has announced plans to award the 4 licenses without providing any opportunity for administrative or judicial review for the applicants whose applications the AMCC has denied – no opportunity to seek review of the AMCC's decision(s) prior to it issuing the licenses.

85.     The AMCC repeatedly and without affording applicants like Enchanted Green any due process changed rules, criteria, and parameters for applicants, their submissions, and the awarding of processor licenses, without affording Enchanted Green or others any reasonable, adequate, proper, or timely notice, without permitting any opportunity for applicants, including Enchanted Green, to comment on the changes to the process, and while abusing supposed "emergency" authority or rules when no true "emergency" ever existed or was present.

86.     Throughout the entire application and licensing process, the AMCC did not observe anything remotely resembling due process with respect to its actions, its decisions, and the manner in which it approached the application and licensing process and its treatment of applicants, including Plaintiff Enchanted Green. The entire process was bereft of any semblance of due process, order, fairness, or logic, and was handled in nothing less than an arbitrary and capricious manner by the AMCC and its members/commissioners.

87.     The AMCC's conduct also violated and violates the Alabama Open Meetings Act in that there was a complete lack of transparency by the AMCC and its members/commissioners with no public deliberation and no notice or opportunity to comment at numerous critical junctures of the application, submission, review, and license award determination process(es).

88.    Plaintiff Enchanted Green has been left with no choice but to timely file this Complaint and the accompanying Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum Brief in Support of Motion for Temporary Restraining Order and Preliminary Injunction to prevent what is almost certain to be irreparable harm caused by the AMCC's numerous instances of misconduct, due process violations, and other actionable and unjust conduct.

**COUNT ONE**
**Due Process Violation(s)**
**(Defendants AMCC, Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey)**

89.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 39, and 44 through 88 of this Complaint, including all subparts of those paragraphs, as if fully restated and set forth herein.

90.    The aforementioned conduct, acts, omissions, and decisions of

91.    Defendant AMCC and its members/commissioners, Defendants Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey, were arbitrary, capricious, an abuse of discretion, were not in accordance with law, and violated Plaintiff Enchanted Green's due process rights.

92.    Defendants AMCC, Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey failed and/or refused to provide Plaintiff Enchanted Green and other applicants with fair,

timely, proper, adequate, and required notice of and an opportunity for comment and to be heard regarding each and every change that was effectuated in the process(es) that applied to processor license applications, submissions, review, deadlines, rules, regulations, measures, parameters, scope(s), and all other aspects of the licensing process touched upon by the Defendants.

93.     As a result of the acts, omissions, actions, and conduct of Defendants AMCC, Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey referenced herein, Plaintiff Enchanted Green has been deprived and is still being deprived of property rights without due process of law and an effective or legitimate remedy, and Plaintiff Enchanted Green has been injured and harmed and continues to be injured and harmed as a direct and/or proximate result of said acts, omissions, actions, and conduct of the Defendants.

94.     Plaintiff Enchanted Green was and is entitled to timely, sufficient, and adequate notice of the basis, if any, underlying Defendants AMCC, Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey's decisions to alter the license application, submission, review, scoring, and award process(es), and a fair and adequate opportunity and hearing process to challenge any underlying basis/bases for such acts, omissions, actions, conduct, and/or decisions. Moreover, that process must be

afforded at a meaningful time, which is immediately and without any delay, when/while relief can still be effectively granted.

95.    To preserve Plaintiff Enchanted Green's ability to obtain a remedy and this Court's (or any other court or body's) ability to afford a remedy, Plaintiff respectfully asks and urges the court to order as follows:

a. Enjoin the Defendants from conducting the licensing issuance process with respect to processor licenses until after Plaintiff Enchanted Green has received a fair opportunity for judicial review as to the Defendants' bases for its numerous rule changes and its ultimate/most recent license award determination/decision which denied Enchanted Green a processor license despite having previously been awarded such a license by the Commission, and a determination of the validity of the Defendants' processes, acts, omissions, actions, conduct, and decisions throughout the entire licensing process;

b. Hold that the Defendants have failed to observe or provide, and have violated, due process with respect to the manner(s) in which they have conducted the licensing application and award processes referenced in this Complaint;

c. Order Defendant AMCC to re-award and re-issue a processor license to Plaintiff Enchanted Green because the third/new process for determining license awards that took place in November 2023 and December 2023 was/is arbitrary, capricious, and tainted.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Enchanted Green, LLC requests that the Court grant the relief requested herein against Defendants AMCC, Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey immediately and without delay.

## COUNT TWO
### Alabama Open Meetings Act Violation(s)
### (Defendants AMCC, Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey)

96.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 39, and 44 through 88 of this Complaint, including all subparts of those paragraphs, as if fully restated and set forth herein.

97.     Defendants AMCC, Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey were required under the Emergency Rules to conduct the "drawing" of the license in an open meeting.

98.     An AMCC staff member reaching under the dais during the licensing award announcement hearing and pulling out a bowl purporting to contain the two applicants with the tied scores already in the bowl, the commissioner who selected the piece of paper to be drawn from the bowl peering/looking into the bowl first before selecting and pulling a piece of paper, the subsequent "vote" and obvious confusion and lack of clarity regarding how to conduct the "drawing, and essentially every aspect of the tie breaking process in which the Commission and the commissioners engaged were violations of the Open Meetings Act as required.

99.     Among other details that violated the Open Meetings Act requirements identified in this complaint, Enchanted Green had no opportunity to witness the process of adding the names to the bowl to guarantee that: (1) Enchanted Green was

actually included; (2) the paper in the bowl had no identifying markings, or were folded so as not to show the names; and (3) the pieces of paper (if there indeed were more than one) in the bowl were the same size and indistinguishable from one another other than the names contained on them.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Enchanted Green, LLC requests that the Court grant the relief requested herein against Defendants AMCC, Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey immediately and without delay.

## COUNT THREE
### Violation(s) of 42 U.S.C. § 1983
### (Defendants Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey)

100.   Plaintiff incorporates by reference and re-alleges paragraphs 1 through 39, and 44 through 88 of this Complaint, including all subparts of those paragraphs, as if fully restated and set forth herein.

101.   Defendants Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey violated Plaintiff Enchanted Green's constitutional right(s) to due process in numerous ways as described herein, and those individual members/commissioners of the AMCC did so while acting under the color of state law.

102.   Defendants Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey personally

participated in the unconstitutional conduct identified and described herein which deprived Plaintiff Enchanted Green of its constitutional right(s), including, but not limited to, its right to due process.

103. Defendants Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey exceeded the authority and powers delegated to them, violated multiple rules they claimed to be bound to and required to observe and adhere to, violated the law, and in doing so deprived Plaintiff Enchanted Green of its constitutional right(s) and harmed, injured, and damages Plaintiff Enchanted Green as a direct and/or proximate result.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Enchanted Green, LLC requests that the Court grant the relief requested herein against Defendants AMCC, Saliski, Blakemore, Gamble, Martin, Jensen, Skelton, Vaughn, Price, Hatchett, Harwell, Szaflarski, Robinson, and Harvey immediately and without delay. Respectfully submitted,

/s/ Justin C. Owen
Justin C. Owen (ASB-9718-I36O)
*Attorney for Plaintiff Enchanted Green LLC*

OF COUNSEL:

BODEWELL, LLP
1286 Oak Grove Road, Suite 200
Birmingham, AL 35209
Tel.: (205) 533-7878
Fax : (205) 922-5819
Email : Justin@bodewell-law.com

32

## **VERIFICATION**

I, Perry Mandera, verify that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge and understanding.

_____

Perry Mandera

STATE OF ___Alabama_____ )
                                                )
COUNTY OF ___Jefferson____ )

I, __Wendy Lynn Murphree____, a Notary Public in and for said County in said State, hereby certify that __Perry Mandera____ is signed to the foregoing Verified Complaint, and who is known to me, acknowledged before me on this date that, being informed of the contents of such instrument, he executed the same voluntarily for the uses and purpose mentioned in the instrument.

Given under my hand and seal this _4th_ day of _December____, 2023.

_____
Notary Public

My Commission Expires: __07-10-2027__



[SEAL]

| WENDY LYNN MURPHREE |
| Notary Public, Alabama State at Large |
| My Commission Expires July 10, 2027 |

33

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of December, 2023, I filed and served a copy of the foregoing upon all parties and attorneys of record via the Court's CM/ECF electronic filing system, electronic mail, private process server, and/or U.S. Postal Service First Class Mail and/or Certified Mail (postage prepaid), which will send notification of such filing to the following persons, entities, and parties of record:

## DEFENDANTS TO BE SERVED PROCESS BY CERTIFIED MAIL AND PRIVATE PROCESS SERVER IMMEDIATELY PURSUANT TO FED. R. CIV. P. 4:

**Alabama Medical Cannabis Commission**
**Attn: Director John McMillan**
**445 Dexter Avenue, Suite 8040**
**Montgomery, AL 36104**

**William Saliski, Jr., M.D.**
**Alabama State House Room 200**
**11 South Union Street**
**Montgomery, AL 36130**

**Sam Blakemore**
**Alabama State House Room 200**
**11 South Union Street**
**Montgomery, AL 36130**

**Dwight Gamble**
**Alabama State House Room 200**
**11 South Union Street**
**Montgomery, AL 36130**

**Angela Martin, M.D.**
**Alabama State House Room 200**
**11 South Union Street**
**Montgomery, AL 36130**

**Eric Jensen**
**Alabama State House Room 200**
**11 South Union Street**
**Montgomery, AL 36130**

**Loree Skelton**
**Alabama State House Room 200**
**11 South Union Street**
**Montgomery, AL 36130**

**Rex Vaughn**
**Alabama State House Room 200**
**11 South Union Street**
**Montgomery, AL 36130**

**Charles Price**
**Alabama State House Room 200**
**11 South Union Street**
**Montgomery, AL 36130**

**Taylor Hatchett**
**Alabama State House Room 200**
**11 South Union Street**
**Montgomery, AL 36130**

**James Harwell**
**Alabama State House Room 200**
**11 South Union Street**
**Montgomery, AL 36130**

**Jerzy Szaflarski, M.D.**
**Alabama State House Room 200**
**11 South Union Street**
**Montgomery, AL 36130**

**Dion Robinson**
**Alabama State House Room 200**
**11 South Union Street**
**Montgomery, AL 36130**

**Jimmie H. Harvey, M.D.**
**Alabama State House Room 200**
**11 South Union Street**
**Montgomery, AL 36130**

Plaintiff's counsel further certifies that prior to filing the Complaint and this/these Motion filing(s), he has informed and/or has attempted to inform the following parties/attorneys/persons who are known to represent Defendant Alabama Medical Cannabis Commission as well as its members/commissioners (the remaining Defendants), of the filing of this lawsuit and this Motion:

Justin C. Aday
445 Dexter Avenue, Suite 8040
Montgomery, AL 36104
Email: Justin.aday@amcc.Alabama.gov

William H. Webster
Webster, Henry, Bradwell, Cohan,
Speagle & DeShazo, P.C.
P.O. Box 239
Montgomery, AL 36101-0239
Email: will@websterhenry.com

Mark D. Wilkerson
Wilkerson & Bryan, P.C.
P.O. Box 830
Montgomery, AL 36101-0830
Email: mark@wilkersonbryan.com

Plaintiff's counsel further certifies and represents that he will provide Mr. Aday, Mr. Webster, and Mr. Wilkerson with copies of this/these filing(s) and the case number for this matter once assigned.

/s/ Justin C. Owen
OF COUNSEL