IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ENCHANTED GREEN LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 2:23-cv-696-ECM |
| ) | [WO] |
| ALABAMA MEDICAL CANNABIS ) | |
| COMMISSION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION and ORDER**

### I. INTRODUCTION

This matter is before the Court on Plaintiff Enchanted Green LLC's ("Enchanted Green") motion for preliminary injunctive relief, (doc. 2), wherein Enchanted Green seeks to enjoin the Alabama Medical Cannabis Commission (the "Commission") and the Commission's members (collectively, "Defendants") from taking action to issue medical cannabis licenses which the Commission awarded on December 1, 2023. The Defendants filed a response to Enchanted Green's motion, and the Court held a hearing on the motion on December 13, 2023. Ruling from the bench, the Court denied Enchanted Green's motion for preliminary injunctive relief and explained that a written opinion would follow. This opinion memorializes the Court's oral ruling denying Enchanted Green's motion.

Enchanted Green filed this lawsuit on December 4, 2023, concerning the Commission's award and subsequent rescission of a medical cannabis processor license to Enchanted Green. (Doc. 1). Enchanted Green brings three claims against the Defendants:

(1) deprivation of property rights without due process of law (Count One); (2) violations of the Alabama Open Meetings Act (Count Two); and (3) violations of Enchanted Green's constitutional rights pursuant to 42 U.S.C. § 1983, including, but not limited to, its right to due process (Count Three). (*Id.* at 27–32). Enchanted Green represented at the preliminary injunction hearing that it seeks preliminary injunctive relief based on its due process claim alleged in Count Three and that Enchanted Green alleges violations of its right to procedural due process under the Fourteenth Amendment to the United States Constitution.[1]

## II. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. BACKGROUND[2]

### A. Statutory and Regulatory Background

In 2021, Alabama enacted the Darren Wesley "Ato" Hall Compassion Act (the

---

[1] Enchanted Green also represented that Counts One and Three are duplicative because both Counts are premised upon alleged violations of Enchanted Green's due process rights under the Fourteenth Amendment to the United States Constitution.

[2] "When ruling on a preliminary injunction, 'all of the well-pleaded allegations [in a movant's] complaint . . . are taken as true.'" *Alabama v. U.S. Dep't of Com.*, 2021 WL 2668810, at *1 (M.D. Ala. June 29, 2021) (alteration in original) (quoting *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976)). In addition to the factual allegations in Enchanted Green's complaint, the Court also considered the evidence presented at the preliminary injunction hearing.

"Act"), which establishes a program for the administration of medical cannabis. ALA. CODE § 20-2A-1, -2. The Act created an administrative agency, the Commission, to license and regulate the cultivation, process, secure transport, dispensing, and testing of medical cannabis in Alabama. *Id.* § 20-2A-20. Additionally, the Act created six categories of licenses relating to the production and sale of medical cannabis, including processor licenses. *Id.* § 20-2A-50(a). A processor license authorizes (1) "[t]he purchase or transfer of cannabis from a cultivator"; (2) "[t]he processing of cannabis into medical cannabis which shall include properly packaging and labeling medical cannabis products, in accordance with this section"; and (3) "[t]he sale or transfer of medical cannabis to a dispensary." *Id.* § 20-2A-63(a).

Applicants who wish to obtain a license must follow the license application procedures set forth in the Act and the Act's accompanying regulations. *See, e.g.*, *id.* § 20-2A-55; Ala. Admin. Code r. 538-X-3-.04, -.05. If an applicant is successful, the Commission will award the applicant a license. ALA. CODE § 20-2A-56(e). Thereafter, the applicant must pay the annual licensing fee before the Commission will issue the license. *Id.* § 20-2A-56(f). For a processor license, the fee is $40,000.00.

The Act provides that "[a] license issued under this article is a revocable privilege granted by this state and is not a property right. Granting a license does not create or vest any right, title, franchise, or other property interest." *Id.* § 20-2A-68. Moreover, Alabama's statutory and regulatory scheme distinguishes a "license awarded" from a "license issued." Regulations define "license awarded" to mean "[t]he Commission's decision to grant a

3

license to a particular Applicant, after which the Applicant has an obligation to pay the license fee." ALA. ADMIN. CODE r. 538-X-3-.02(11).  "License issued" is defined to mean "[t]he Commission's delivery of a license to a particular Applicant, after the license fee has been paid and all obstacles to the Applicant's assuming the role of a Licensee have been removed." *Id.* r. 538-X-3-.02(12).  The regulations further provide that "[u]nless the Commission or other court of competent jurisdiction enters a stay against the issuance of some or all licenses, licenses shall issue to all Applicants who have been awarded licenses upon processing of the appropriate license fees." *Id.* r. 538-X-3-.17.  "An Applicant becomes a Licensee upon receipt of the Commission's issuance of the license." *Id.* r. 538-X-3-.02(12).

Under the Act, the Commission may issue up to four processor licenses. *See* ALA. CODE § 20-2A-63(b).  But the regulations provide that the Commission has the discretion to issue fewer than the maximum number of licenses per category or to issue no licenses in any or all license categories. ALA. ADMIN. CODE r. 538-X-3-.03(2).  Moreover, "the Commission shall not issue the maximum number of licenses to the extent it determines that an insufficient number of the available Applicants in a category are properly qualified to hold a license in the category applied for." *Id.*

**B.  Factual and Procedural Background**

Enchanted Green was formed between October 2022 and December 2022 in order to apply for a processor license under the Act.  Sometime between its formation and June 12, 2023, Enchanted Green applied for a processor license.  On June 12, 2023, the

Commission voted to award Enchanted Green a processor license. The Commission subsequently stayed the award of all licenses, citing scoring inconsistencies. Additionally, on June 23, 2023, in a lawsuit filed in state court by another company who had sought a different type of medical cannabis license, the state court issued a Temporary Restraining Order staying the issuance of all licenses awarded on June 12, 2023. (*See* doc. 28-1 at 2–5).

On August 10, 2023, the Commission lifted its self-imposed stay; voided the license awards from June 12, 2023; and awarded multiple medical cannabis licenses, including a processor license to Enchanted Green. Thereafter, Enchanted Green paid the $40,000.00 license fee to the Commission. On August 21, 2023, the state court entered another Temporary Restraining Order, restraining and enjoining the Commission from issuing any licenses that had been awarded on August 10, 2023. This Temporary Restraining Order was extended multiple times. (*See, e.g.*, *id.* at 6–11).

On October 12, 2023, the Commission adopted an emergency rule providing "special procedures" applicable to all license applications that "become subject to an award of license by the Commission on or after the effective date of this Rule." *See* ALA. ADMIN. CODE r. 538-X-3-.20ER. "In order to determine the order in which Applicants should be considered," each Commissioner submitted "a written form providing an overall preliminary rank, in descending order, of each of the Applicants in the license category, giving due consideration to all statutory and regulatory criteria." *Id.* § 538-X-3-.20ER(6). The emergency rule provides that the Commissioners' forms "shall be tabulated and

5

averaged by the Commission staff and *used solely to determine the order in which individual Applicants are subsequently considered.*" *Id.* (emphasis added). The emergency rule also contains procedures in the event that two or more applicants tie in the rankings:

> In those instances where two or more applicants receive identical average rankings, the order shall be determined by a drawing. The Chair will call for a motion to approve or deny each application in the order established above. Following such motion, duly seconded, the Chair will provide an opportunity for further deliberations and a vote.

*Id.*

On October 26, 2023, the Commission lifted its administrative stay and voted to "rescind" all licenses awarded in August 2023. In November 2023, the Commission informed Enchanted Green and other license applicants that the Commission would be "observing a new/alternative process for applicants to be awarded licenses – a third round of license awards – that would involve, among other things, applicants making presentations to the [Commission] prior to the determination of awarding licenses to applicants." (Doc. 1 at 15, para. 52r). The Commission also informed Enchanted Green and other license applicants that the scores from the prior application considerations would not be considered. On November 27, 2023, the Commission voted to enter into a settlement agreement with some of the state court plaintiffs in which the Commission agreed to disregard the prior scores for the purpose of selecting new licenses.

Processor license applicants, including Enchanted Green, gave presentations to the Commission on November 28, 2023. On December 1, 2023, the Commission met and voted to award four processor licenses. Enchanted Green and another processor license applicant, Jasper Development Group, Inc. ("JSD"), had tied for fourth place in the

rankings which determine the order in which applicants are considered. Pursuant to the procedures outlined in the Commission's emergency rule, the Commission drew a name from a bowl to determine which applicant would be voted on first. JSD's name was drawn. The Commission then held a vote on whether to award a processor license to JSD. A majority of Commission members voted to award the fourth and final processor license to JSD. Some confusion ensued among the Commission members as to whether the Commission also had to vote on Enchanted Green's license application. After discussion, the Commission voted to deny licenses to all remaining processor license applicants, which included Enchanted Green.

## IV.  DISCUSSION

As discussed above, Enchanted Green seeks preliminary injunctive relief based on its due process claim alleged in Count Three. Enchanted Green argues that the Commission violated its procedural due process rights under the Fourteenth Amendment when the Commission voided or rescinded the processor license which Enchanted Green had been awarded twice (but which had not been issued), and during the December 1, 2023 meeting in which the Commission voted to award processor licenses to four applicants and Enchanted Green was not awarded a license.

Enchanted Green is entitled to a preliminary injunction if it demonstrates: (1) a substantial likelihood of success on the merits; (2) a likelihood of suffering irreparable injury without the injunction; (3) that the threatened injury to it outweighs the harm the injunction would cause the other litigant; and (4) that the injunction would not be adverse

to the public interest. *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1290–91 (11th Cir. 2022). Where, as here, "the [State] is the party opposing the preliminary injunction, its interest and harm merge with the public interest," and thus the third and fourth elements are the same. *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020) (citing *Nken v. Holder* 556 U.S. 418, 426 (2009)).

A preliminary injunction is "'not to be granted unless the movant clearly established the "burden of persuasion"' for each prong of the analysis." *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014) (citation omitted). Enchanted Green, as the movant, must satisfy its burden on all four elements "by a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). "Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005) (per curiam); *see also Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127–28 (11th Cir. 2022) (observing that likelihood of success on the merits is "the most important preliminary-injunction criterion"). Here, the Court's analysis begins—and ends—with the substantial likelihood of success criterion.

Enchanted Green contends that it can establish a substantial likelihood of success on the merits of its procedural due process claim concerning the Commission's rescissions, without prior notice or opportunity to be heard, of the processor license awarded (but not issued) to Enchanted Green, and concerning the Commission's award of processor licenses on December 1, 2023. Among other things, Enchanted Green cites a purported anomaly

in the tie-breaking process the Commission utilized during the December 1 vote, arguing that under the Commission's emergency rule, Enchanted Green was entitled to a separate vote on its application but did not receive one.

A procedural due process claim requires "proof of three elements: (1) the deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). The presence of state action is undisputed. At the hearing, Enchanted Green argued that it has protected property interests (1) in a fair process for determining the recipients of processor licenses and (2) in the license itself. Enchanted Green acknowledged that the absence of a protected property interest would be fatal to its due process claim.

"Property interests stem not from the Constitution, but from such sources as statutes, regulations, ordinances, and contracts. Whether these sources create a property interest must be decided by reference to state law." *Arrington v. Helms*, 438 F.3d 1336, 1348 (11th Cir. 2006) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 576–77 (1972)). "Mere abstract need or desire for a benefit will not create a protectible property interest; instead there must be a legitimate claim of entitlement to the expected benefit." *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir. 1989) (citing *Bd. of Regents*, 408 U.S. at 577). "The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012) (alteration in original) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)).

The Commission contends that Enchanted Green lacks a protected property interest in a fair process because the procedural due process clause protects substantive property rights, not process in and of itself. The Court agrees. "[T]he Supreme Court has repeatedly explained that the due-process clause requires process only to protect certain *rights* (like property) and doesn't require process to protect *process*." *Louis Del Favero Orchids, Inc. v. Rivkees*, 2022 WL 2237663, at *4 (11th Cir. June 22, 2022) (emphases in original).[3] For example, in *Olim v. Wakinekona*, the Supreme Court rejected a procedural due process claim brought by a state prisoner who had been transferred to an out-of-state prison without first receiving a hearing contemplated by prison regulations. 461 U.S. 238, 248–51 (1983). The Supreme Court concluded that, for purposes of the procedural due process clause, it did not matter that the prison regulations required a specific type of hearing before an inmate could be transferred because "[p]rocess is not an end in itself." *Id.* at 250. Rather, "[i]ts constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Id.* "The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, . . . but in making that choice the State does not create an independent substantive right." *Id.* at 250–51; *see also Rivkees*, 2022 WL 2237663, at *1, *5 (explaining that the federal procedural due process clause "doesn't guarantee process *as an end in itself*; it guarantees process only as process *regards* a substantive right" and concluding that the plaintiff lacked "a property interest in the process of licensure" (emphases in original)).

---

[3] While the Court recognizes that *Rivkees* is nonbinding, the Court finds its analysis persuasive.

Here, Enchanted Green does not have a constitutionally-protected property interest in the process of medical cannabis licensure. *See Rivkees*, 2022 WL 2237663, at *5. Because "[p]rocess is not an end in itself," *Olim*, 461 U.S. at 250, the Commission's alleged failure to provide Enchanted Green with a fair process for awarding medical cannabis licenses does not implicate the Fourteenth Amendment's procedural due process clause. Moreover, to the extent Enchanted Green asserts that the licensure process was unfair because Enchanted Green did not receive a vote on its application at the December 1, 2023 meeting, the Court concludes that the record undermines the contention that Enchanted Green did not receive a vote. Evidence presented at the preliminary injunction hearing establishes that after the Commission awarded the four processor licenses, the Commission voted to deny processor licenses to the remaining applicants, which included Enchanted Green. Indeed, Enchanted Green acknowledged that the denial vote amounts to a vote on Enchanted Green's application, notwithstanding the fact that it was a block vote. Consequently, to the extent that Enchanted Green claims a protected property interest in the medical cannabis licensure process, Enchanted Green's due process claim is not substantially likely to succeed on the merits.

Enchanted Green's assertion that it has a protected property interest in the processor license itself fares no better. As indicated above, the Alabama Legislature declared in the Act that "[a] license issued under this article is a revocable privilege granted by this state and is not a property right," and that "[g]ranting a license does not create or vest any right, title, franchise, or other property interest." ALA. CODE § 20-2A-68. Here, the undisputed

evidence is that although Enchanted Green was previously awarded a license, it was never issued a license. But even if Enchanted Green had been issued a license, Enchanted Green lacks a property interest in the issued license that is protected by the Fourteenth Amendment's due process clause because state law expressly disclaims any property interest in such a license. *See id.*; *see also Arrington*, 438 F.3d at 1348.

The Court further concludes that Enchanted Green lacks a protected property interest in an awarded license. In the state court litigation concerning medical cannabis licenses, the state court reasoned that "[i]f a 'license issued' is not a property right, then its precursor, a 'license awarded,' surely cannot be a property right." (Doc. 28-1 at 50). This Court agrees with the state court's reasoning on this point. Thus, to the extent that Enchanted Green claims a property interest in either an awarded or issued license, Enchanted Green has not shown a substantial likelihood of success on its due process claim.

Enchanted Green's asserted property interest in the processor license also fails because the Commission has discretion in the granting of licenses. Where state law vests the relevant local authority with discretion in the granting of licenses, a license applicant lacks a constitutionally protected "property interest in the opportunity to acquire a license." *See Cheek v. Gooch*, 779 F.2d 1507, 1508 (11th Cir. 1986) (per curiam); *Metro. Atlanta Task Force for the Homeless v. City of Atlanta*, 503 F. App'x 867, 869 (11th Cir. 2013) (per curiam) ("[W]here the statutes or regulations for the issuance of permits, licenses, or grants are discretionary, an applicant has no protected property interest."); *see also Betancur v. Fla. Dep't of Health*, 296 F. App'x 761, 764 (11th Cir. 2008) (per curiam)

12

("[Plaintiff] has no right under Florida law to be granted a license [to practice naturopathy] and has no liberty or property interest protected by due process.").[4] Here, the Commission has the discretion to issue fewer than the maximum number of licenses per category or to issue no licenses in any or all license categories. ALA. ADMIN. CODE r. 538-X-3-.03(2). Therefore, for this additional reason, Enchanted Green has not shown a substantial likelihood of success on its due process claim.

Because Enchanted Green has failed to show a substantial likelihood of success on the merits, Enchanted Green has not met its burden of establishing entitlement to a preliminary injunction. *See Schindler*, 403 F.3d at 1226.

## V. CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED that Enchanted Green's motion for preliminary injunctive relief (doc. 2) is DENIED.

Done this 12th day of January, 2024.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] While the Court acknowledges that *Task Force for the Homeless* and *Betancur* are nonbinding, the Court finds the analysis in those cases persuasive.